IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY VAN FERRELL, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-CV-0133-GKF-JFJ |
| ) | |
| SCOTT WALTON, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff Johnny Van Ferrell, Jr., a state prisoner appearing pro se and proceeding *in forma pauperis*, brings this federal civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff asserts claims for deliberate indifference to his serious medical needs and unconstitutional conditions of confinement.  Before the Court are: (1) Plaintiff's motion seeking leave to identify John Doe defendants (Dkt. 53); the motion to dismiss of Defendant Turn Key Health Clinics, LLC (Dkt. 38); and (3) the motion to dismiss of Defendants Scott Walton, John Sappington, and Zach Starkey (Dkt. 41).  The Court addresses each motion in turn.

I.  BACKGROUND

This matter arises from events alleged to have occurred while Plaintiff was housed as a pretrial detainee at the Amos G. Ward Detention Facility ("Facility"), located in Claremore, Oklahoma.  Plaintiff brings claims against Sheriff Scott Walton, Undersheriff John Sappington, and Captain Zach Starkey in their individual and official capacities, as well as Turn Key Health Clinics, LLC and various John Doe and Jane Doe defendants.  Dkt. 1, at 2-4, 11-14.  He seeks injunctive relief, as well as compensatory and punitive damages.  *Id.* at 6.

Plaintiff alleges that on September 1, 2021, he tested positive for COVID-19 and was placed in a medical observation cell for quarantine.  *Id.* at 18.  Plaintiff told Facility staff that he

believed the result was a "false positive" resulting from a COVID-19 vaccine he received five days prior. *Id.* Plaintiff claims that the medical observation cell contained mold around the sink, toilet, and air vent. *Id.* at 19, 25. He alleges that "[w]hen [he] entered [the medical observation cell], he cleaned mold from the exhaust air vent, feces from the lid of [the] toilet, sink and floor[,] and swept up 18 crumbles of feces wipe toilet paper from [the] floor." *Id.* at 25. He alleges that he requested a broom, mop, and disinfectant "to sanitize the cell floor, sink [and] toilet," but cleaning supplies were not provided. *Id.* at 19, 25.

Plaintiff's temperature was 96.8 degrees on September 2, but rose to 102.3 degrees on September 3. *Id.* at 19. Plaintiff claims he woke with a pain in his chest and experienced vertigo. *Id.* He was seen by medical staff, who "dismissed Plaintiff's 'other than COVID Complaint'" and provided "a crushed up [Ibuprofen]." *Id.* His temperature continued to rise over the next few days, reaching 103.9 degrees on September 5, and 104.1 degrees on September 6. *Id.* at 20. Medical staff monitored Plaintiff twice each day. *Id.* Plaintiff requested a doctor on September 6, but was told that, because it was Labor Day, the Facility was too short staffed. *Id.* Plaintiff claims that "[a]t one point [he] could not even rise up from his mattress on the floor, so the LPN came in the cell, lifted [his] head, poured [Ibuprofen] and water into [his] mouth, and left." *Id.* His temperature at the time was 102.9 degrees. *Id.*

Plaintiff alleges that on the morning of September 7, 2021, he requested a doctor again. Specifically, Plaintiff states:

> During breakfast call . . . , Officer Hubbard came in[.] Plaintiff stated (as he was lying on mattress unable to move) to 'get him a doctor or a body bag, he was leaving this cell today.' She shut the door, and left Plaintiff lying on floor. Sometime after that, LPN . . . Dustin came in and screamed 'What is wrong with you?'(noticing the sever[e] deteriorated state and unresponsive state Plaintiff was in). Plaintiff remembers hearing him say "Get him up, I'm going to call the provider and get a wheelchair."

Dkt. 1, at 20. Plaintiff was placed in a wheelchair and transported to a hospital, where he was diagnosed with pneumonia. *Id.* at 20-21. He contends that hospital staff informed him that the pneumonia was caused by breathing in black mold and that the "lack of medical attention (wrong diagnosis) and treatment, along with his prolonged high temperature (over 101 [degrees] for 4 ½ days), led to the permanent loss of up to 40% of his lung capacity (<u>now</u> has 21%)," as well as "extreme emphysema" and blood clots in his legs. *Id.* at 21.

Plaintiff brings two claims under 42 U.S.C. § 1983: (1) a claim of unconstitutional conditions of confinement based on the alleged "fail[ure] to provide . . . a safe, secure an[d] disease free environment," and (2) a claim of deliberate indifference to Plaintiff's serious medical needs based on the alleged misdiagnosis of his condition and lack of medical attention. Dkt. 1, at 18, 22.[1]

    II.    PLAINTIFF'S "MOTION TO PROVIDE IDENTIFICATION OF DEFENDANTS 'JOHN AND JANE DOES AGW STAFF' AND 'JANE DOES TURN KEY HEALTH CLINICS STAFF'"

Plaintiff now seeks leave to identify the John and Jane Doe defendants referenced in his Complaint. Specifically, the Complaint names "unknown LPN providers for September 3-7, 2021/am and pm shifts," who Plaintiff claims failed to properly diagnose and treat Plaintiff or perform their gatekeeper function. Dkt. 1, at 4, 13. The Complaint further names "unknown detention officers and Rogers County Deputies on shift September 3-7, 2021 (am and pm shifts)," who Plaintiff alleges failed to "inform administration on medical of Plaintiff['s] deteriorating state" and "failed to correct the unsanitary, unclean, disease ridden cells." *Id.* at 4, 14. Plaintiff sues these defendants in their individual and official capacities. *Id.* at 4.

---

[1] Plaintiff also briefly references "retaliation" and "theft of property." Dkt. 1, at 11-13. Plaintiff, however, does not state that he is bringing a § 1983 claim based on either unconstitutional retaliation or unconstitutional deprivation of property, nor does he provide facts to support such claims.

In his motion, Plaintiff identifies the "LPN providers" as Turn Key Health Clinics, LLC staff members Dustin Powers, Amy Moore, Amity Williams, Jennifer Ragsdale, Tara Adams, Jessica Mobley, Victoria Stover, Casey Combs, and Carly Parris ("TKHC Defendants"). Dkt. 53, at 3-4. He states that these individuals "failed to follow prescribed medicational [sic] routines for disbursement of medications" and failed to diagnose or report Plaintiff's medical emergency. *Id.* at 4. Plaintiff then identifies the "unknown detention officers and Rogers County Deputies" as Lt. Brandon Massingale, Daniel Johnson, Sgt. Gabriel Cantrell, Becca Matlock-Hubbard,[2] Sgt. Daphine Sims, and Cpl. Coby Williams ("Facility Defendants"). *Id.* at 2-3. Plaintiff states that Massingale is the Facility's assistant jail administrator, that he had "daily contact with Plaintiff," and that he was a "decision maker" for "all incidents, emergencies, or altercations." Dkt. 53, at 2. Plaintiff claims that Johnson, Cantrell, Matlock-Hubbard, Sims, and Williams lacked training and disregarded policies, including a policy to provide hourly "deck checks." *Id.* at 3.

Defendants filed a joint response (Dkt. 57) in opposition to the motion. Construing Plaintiff's motion as a request to amend his pleading, Defendants argue that the motion should be

---

[2] As noted, Plaintiff's Complaint contains an allegation involving an individual identified as Officer Hubbard. Plaintiff claims that on the morning of September 7, 2021, Officer Hubbard observed him "lying on [his] mattress unable to move," that Plaintiff told Officer Hubbard to "'get him a doctor or a body bag, he was leaving this cell today,'" and that Officer Hubbard "shut the door, and left Plaintiff lying on [the] floor." Dkt. 1, at 20. Plaintiff does not explicitly indicate whether Becca Matlock-Hubbard, whom he now names in his motion as a formerly unidentified Jane Doe, is the same individual identified in the Complaint as Officer Hubbard. However, an exhibit attached to the Complaint and the special report shows that Plaintiff submitted an inmate request in October 2021, alleging that he made the "body bag" comment to "Officer Matlock" on September 7, 2021. Dkt. 1, at 25; Dkt. 39-6, at 2. And the special report identifies Detention Deputy Becca Matlock-Hubbard as one of the officers the Rogers County Sheriff's Office interviewed when it prepared the special report. Dkt. 39, at 1. On this record, the Court finds it reasonable to infer that Plaintiff's references to "Officer Hubbard" and "Officer Matlock" describe alleged actions or omissions of Officer Becca Matlock-Hubbard. However, as discussed below, *see infra* Section II.b., it would be futile to add Officer Matlock-Hubbard as a defendant because Plaintiff fails to state any plausible claims against her.

4

denied because it fails to comply with the Court's local rules for seeking amendments, *see* LCvR7-1(h), and because amendment would be futile. Plaintiff did not submit a reply.

Substitution of a named defendant in place of an unknown "John Doe" defendant "amount[s] to adding a new party." *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004). While Rule 15 of the Federal Rules of Civil Procedure prescribes "that leave to amend a complaint shall be freely given when justice so requires," the Court "may refuse to allow amendment if it would be futile." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)). For the reasons discussed herein, the Court determines that amendment of Plaintiff's Complaint to name the formerly unidentified parties would be futile.

   a. TKHC Defendants

Plaintiff claims the TKHC Defendants provided constitutionally inadequate medical care and failed to perform their gatekeeper function as medical professionals. The Eighth Amendment's proscription against cruel and unusual punishment entitles convicted inmates to a "certain minimum standard of medical care while incarcerated." *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). This same standard of medical care is applicable to pretrial detainees through the Fourteenth Amendment's Due Process Clause, and the Court "applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983" when analyzing medical care provided to a pretrial detainee. *Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262 (10th Cir. 2022) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002)).

Under this standard, a constitutional violation occurs if a prison official is "deliberate[ly] indifferen[t] to an inmate's serious medical needs." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The test for constitutional liability "involves both an objective and a subjective component." *Id.* The objective component is met if "the deprivation at issue was . . . 'sufficiently serious.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Sealock*, 218 F.3d at 1209). "The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference.'" *Id.* (alteration omitted) (quoting *Farmer*, 511 U.S. at 837).

The deliberate indifference standard can be met both in the context of a medical professional "fail[ing] to properly treat a serious medical condition" and under the "gatekeeper theory." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023). Under the latter theory, a medical professional may be deliberately indifferent if he or she "knows that his [or her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, [but] . . . delays or refuses to fulfill that gatekeeper role." *Sealock*, 218 F.3d at 1211.

1. <u>Individual-Capacity Claims Against TKHC Defendants</u>

The Court assumes without deciding that Plaintiff's condition was sufficiently serious to satisfy the claim's objective prong. Plaintiff's allegations, however, do not plausibly demonstrate that any TKHC Defendant acted with deliberate indifference in their administration of medical

care or in a gatekeeping function. According to Plaintiff's allegations, the TKHC Defendants believed Plaintiff had COVID-19, due to Plaintiff's positive test result, and were treating him in accordance with that diagnosis. Though Plaintiff had a high fever, he also claims that he was administered Ibuprofen, Tylenol, and Albuterol Sulfate and was monitored by medical staff twice a day. Dkt. 1, at 25.

Though Plaintiff's initial request to see a doctor was denied, Plaintiff does not allege any symptoms at the time other than a 104.1 degree fever, and Plaintiff was already being provided medication for this symptom. Dkt. 1, at 20. A medical professional's failure to realize the need for alternative treatment under these circumstances does not rise to the level of deliberate indifference. *See Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) ("[I]nadvertent failure to provide adequate medical care is not enough, nor does a complaint that a physician has been negligent in diagnosing or treating a medical condition . . . state a valid claim of medical mistreatment under the Eighth Amendment." (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105, 106 (1976))). Nor does Plaintiff plausibly allege that the denial constitutes deliberate indifference under a gatekeeper theory. According to the Complaint, the initial denial of Plaintiff's request to see a doctor was due to an issue beyond the gatekeeper's control—staffing issues on a federal holiday. Dkt. 1, at 20. This does not support a showing that the gatekeeper acted with deliberate indifference.

Plaintiff also alleges that "[a]t one point [he] could not even rise up from his mattress on the floor, so the LPN came in the cell, lifted [his] head, poured [Ibuprofen] and water into [his] mouth, and left." *Id.* at 20. The circumstances alleged, while possibly indicating negligent care, do not plausibly show that the nurse acted with a "sufficiently culpable state of mind" to state a constitutional violation. *Farmer*, 511 U.S. at 834. Plaintiff states that his temperature at the time

was 102.9 degrees. Dkt. 1, at 20. The nurse, believing Plaintiff had COVID-19 and a resulting fever, was treating Plaintiff in accordance with that understanding. There is no indication that the nurse "dr[e]w the inference" of a substantial risk of harm requiring alternative care. *Mata*, 427 F.3d at 751; *see Self*, 439 F.3d at 1233 ("[W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law."). This is not a circumstance in which the nurse "knew the inmate was suffering from [an undiagnosed symptom] yet 'completely refused to assess or diagnose' the potential . . . emergency." *Id.* at 1231; *see id.* at 1232 ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation, absent evidence the prison official knew about and disregarded a substantial risk of harm to the prisoner's health or safety." (citations, alteration, and internal quotation marks omitted)).

### 2. Official-Capacity Claims Against TKHC Defendants

Plaintiff's official-capacity claims against TKHC Defendants are effectively claims against Turn Key Health Clinics, LLC for municipal liability. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (explaining that the doctrine of municipal liability extends to private § 1983 defendants acting under color of state law). Because Plaintiff has brought claims against Turn Key Health Clinics, LLC as a separate defendant, Plaintiff's claims against TKHC Defendants in their official capacities are redundant and are subject to dismissal for the reasons articulated in the Court's discussion of Turn Key Health Clinics, LLC's motion to dismiss. *See infra* Section III.

### b. Facility Defendants

Plaintiff claims that the Facility Defendants failed to "inform administration on medical of Plaintiff['s] deteriorating state" and "failed to correct the unsanitary, unclean, disease ridden cells." Dkt. 1, at 14. He states in his motion that, as the Facility's assistant jail administrator, Massingale had daily contact with Plaintiff and acted as a "decision maker," while Johnson, Cantrell, Matlock-Hubbard, Sims, and Williams disregarded policies, including a policy to provide hourly 'deck checks.'" Dkt. 53, at 2. The Court interprets these claims as a claim of deliberate indifference to Plaintiff's serious medical needs and a claim of unconstitutional conditions of confinement.

"Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). Like claims of constitutionally inadequate medical care, claims of inadequate conditions of confinement arise for pretrial detainees under the Fourteenth Amendment's Due Process Clause, though the Eighth Amendment standard provides the benchmark for such claims. *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003). Conditions-of-confinement claims also contain both an objective and a subjective component. *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component requires conditions sufficiently serious so as to deprive inmates of the minimal civilized measure of life's necessities" or to "constitute a substantial risk of serious harm." *Id.* (citations and internal quotation marks omitted). "The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.* A defendant is not deliberately indifferent unless he or she "knew of and disregarded 'an excessive risk to inmate health or safety.'" *Brooks v. Colo. Dep't of Corr.*,

12 F.4th 1160, 1173 (10th Cir. 2021) (quoting *Farmer*, 511 U.S. at 837); *see id.* ("[O]nly those prison officials that inflict punishment are liable for violating the dictates of the Eighth Amendment.").

### 1. Individual-Capacity Claims Against Facility Defendants

Plaintiff's general claim that Facility Defendants failed to "inform administration on medical of his deteriorating state" fails to state a claim against Facility Defendants for deliberate indifference to his serious medical needs. Dkt. 1, at 14. Plaintiff's allegations do not demonstrate the level of personal participation or subjective culpability commensurate with a viable constitutional claim. *Mata*, 427 F.3d at 751. Plaintiff does not describe any instance in which a Facility Defendant observed Plaintiff in a physical state of which medical personnel were not already aware.[3] Accordingly, Plaintiff has failed to state a cognizable claim against the Facility Defendants for inadequate medical care.

Plaintiff additionally claims that Facility Defendants "were in direct contact with Plaintiff" while he was in the medical observation cell, and that, "through complaints from other pre-trial detainees, failed to correct the unsanitary, unclean, disease ridden cells, through ignorance and training." Dkt. 1, at 14. Plaintiff's allegations fail to meet either the objective or subjective prong of a conditions-of-confinement claim.

---

[3] As previously stated, Plaintiff does allege Officer Matlock-Hubbard disregarded his need for medical care. He specifically alleges he told her, "during breakfast call on Tuesday morning, September 7, 2021," that he needed a "doctor or a body bag" and that Officer Matlock-Hubbard "shut the door, and left Plaintiff lying on [the] floor." Dkt. 1, at 20. But he also alleges "sometime after that, LPN . . . Dustin came in," provided him a wheelchair, and delivered him to waiting EMTs who immediately transported Plaintiff to the hospital in Claremore. *Id.* at 20-21. Even accepting the truth of Plaintiff's allegations, the most reasonable inference to be drawn from those allegations is that LPN Powers responded to Plaintiff's cell not long after Plaintiff complained to Officer Matlock-Hubbard because Officer Matlock-Hubbard informed LPN Powers of Plaintiff's allegedly "deteriorated [physical] state" and his request for a doctor. *Id.* at 20. Plaintiff thus fails to plausibly allege that Officer Matlock-Hubbard acted with deliberate indifference.

"While no single factor controls the outcome of [conditions-of-confinement] cases, the length of exposure to the conditions is often of prime importance" when determining whether the conditions were sufficiently serious to implicate constitutional rights. *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). The duration of the deprivation, however, is "inversely proportional" to the severity of the deprivation, such that "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration." *Id.* (internal quotation marks omitted) (quoting *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000). "[C]onditions, such as a filthy cell, may be 'tolerable for a few days.'" *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)). Courts, however, are "especially cautious about condoning conditions that include an inmate's proximity to human waste." *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990); *see also Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (*per curiam*) (concluding "no reasonable correctional officer could have concluded that . . . it was constitutionally permissible to house" an inmate "for six full days" in one cell that "was covered, nearly floor to ceiling, in massive amounts of feces," then, in a "second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes" and, when used by the inmate to "relieve[] himself, caus[ed] the drain to overflow and raw sewage to spill across the floor," the same floor on which the inmate was required to sleep because the cell had no bunk (citation and internal quotation marks omitted)).

When applying these principles, the Tenth Circuit has found that a three-day confinement in a "feces-covered cell" was sufficient to meet the objective prong of a prisoner's conditions-of-confinement claim. *McBride*, 240 F.3d at 1291-92. The Tenth Circuit likewise found the objective prong met where flooding conditions and lack of access to working toilets caused an inmate to be

11

"expos[ed] to other inmates' urine and feces via the standing water" and to be in "close confinement with the odor of his own accumulated urine" for a period of 36 hours. *DeSpain*, 264 F.3d at 974. Conversely, the Tenth Circuit has held that "a situation involving filthy cells, poor lighting, inadequate ventilation or air cooling, and unappetizing food 'simply [did] not rise to the level of a constitutional violation' where prisoners were exposed to the conditions for only forty-eight hours." *Id.* (quoting *Barney*, 143 F.3d at 1311-12). In an unpublished decision, the Tenth Circuit found that "four nights and five days in a stripped basement intake cell . . . with minimal clothing and bedding, no personal hygiene items, and no cleaning supplies for the cell" did not constitute cruel and unusual punishment. *Estrada v. Kruse*, 38 F. App'x 498, 498-99 (10th Cir. 2002).[4]

When comparing these cases to the conditions alleged by Plaintiff, the Court determines that Plaintiff has failed to allege conditions sufficiently serious to deprive Plaintiff of the minimal civilized measure of life's necessities or to constitute a substantial risk of serious harm. *Shannon*, 257 F.3d at 1168. Plaintiff alleges that he "cleaned mold from the exhaust air vent, feces from the lid of [the] toilet, sink and floor[,] and swept up 18 crumbles of feces wipe toilet paper from the floor" at the time he entered the cell. Dkt. 1, at 25. Thus, the duration of his exposure to these conditions was minimal. And though he was not provided disinfectant "to sanitize the cell floor, sink [and] toilet," this deprivation in sanitation is less severe than direct exposure to feces and lasted only a week. *Id.* at 19, 25; *see Barney*, 143 F.3d at 1311 ("The Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)); *Taylor*, 141 S. Ct. at 53-54

---

[4] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

(discussing obviously unconstitutional condition of housing inmate, for at least four days, in cell with feces "all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet" (citation and internal quotation marks omitted)); *Hutto*, 437 U.S. at 686 ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.").

Further, Plaintiff's general allegations that Facility Defendants "failed to correct the unsanitary" conditions and disregarded polices do not plausibly demonstrate that any Facility Defendant "knew of and disregarded 'an excessive risk to [Plaintiff's] health or safety.'" Dkt. 1, at 14; *Brooks*, 12 F.4th at 1173; *see Galloway v. Whetsel*, 124 F. App'x 617, 619 (10th Cir. 2005) (finding subjective prong was not met where the prisoner "simply stated that requests for supplies went unheeded" without alleging the defendant was aware of the refusal). Even if the Facility Defendants were aware of the presence of mold in the medical observation cell and the denial of disinfectant products, the allegations do not plausibly show that any Facility Defendant drew the inference that either posed a serious risk to Plaintiff's health. *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

2. Official-Capacity Claims Against Facility Defendants

Plaintiff's official-capacity claims against the Facility Defendants are effectively claims against Rogers County for municipal liability. *See Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent."). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*,

436 U.S. 658, 691 (1978)). Rather, to establish municipal liability, a plaintiff must show "(1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation." *Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th Cir. 2022).

As previously discussed, Plaintiff has failed to plausibly allege that the Facility Defendants violated Plaintiff's constitutional rights. Thus, there is no constitutional violation supporting an official-capacity claim. Even if this were not so, Plaintiff pleads no facts plausibly showing an "official policy or custom" that "was both deliberately indifferent to his constitutional rights and the moving force behind his injury." *Porro*, 624 F.3d at 1328. Plaintiff makes nonspecific references to "deficient polic[ies]" but provides no facts describing the nature of the policies or how they resulted in his alleged injuries. Plaintiff complains of the Facility Defendants' failure to follow policies, including a policy requiring hourly "deck checks." He does not, however, allege that the policies themselves caused his alleged constitutional violations or explain how Rogers County was deliberately indifferent.

    c. *Conclusion*

For the foregoing reasons, the Court determines amendment of the Complaint to identify the John and Jane Doe defendants would be futile. The motion is, therefore, denied. Further, the Complaint is dismissed as to all individual and official capacity claims raised against the John and Jane Doe Defendants, *see* Dkt. 1, at 13-14, for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(1).

III.    DEFENDANT TURN KEY HEALTH CLINICS, LLC'S MOTION TO DISMISS

Defendant Turn Key Health Clinics, LLC seeks dismissal from Plaintiff's action on the basis that Plaintiff has failed to state a cognizable claim against it. Dkt. 38. Plaintiff has responded

in opposition to the motion (Dkt. 54), and Defendant Turn Key Health Clinics, LLC has replied (Dkt. 58).

To survive a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555-56. While the Court construes a pro se litigant's pleadings liberally, this liberal construction, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1174-75 (10th Cir. 1997).

Defendant Turn Key Health Clinics, LLC, is a private entity acting under color of state law. Like municipal entities, a private actor "cannot be held liable solely because it employs a tortfeasor—or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory." *Dubbs*, 336 F.3d at 1216 (quoting *Monell*, 436 U.S. at 91). Rather, liability attaches only if the plaintiff establishes that the entity "executed a policy or custom" that caused the plaintiff "to suffer deprivation of constitutional or federal rights." *Whitesel v. Sengenberger*, 222 F.3d 861, 870 (10th Cir. 2000).

As previously discussed, Plaintiff has not plausibly alleged a constitutional violation by any Turn Key Health Clinics, LLC employee. *See Suro v. Tiona*, 784 F. App'x 566, 570 (10th Cir. 2019) ("Since [plaintiff] has not established any constitutional violations by any of

15

[defendant's] employees, his claim against [defendant] fails."). Even if an employee had committed a constitutional violation against Plaintiff, Plaintiff has shown no basis for municipal liability. Plaintiff alleges that Turn Key Health Clinics, LLC "establishe[d] polic[ies] and procedures for the Facility which were adverse to Plaintiff's serious medical needs," Dkt. 1, at 11, but he fails to identify any specific custom, policy, or practice or describe how it directly caused his alleged constitutional deprivation. *See Jenkins v. Wood*, 81 F.3d 988, 993-94 (10th Cir. 1996) (explaining that the plaintiff must show both the existence of a custom or policy and "a direct causal link between the custom or policy and the violation alleged" to establish municipal liability). Nor does Plaintiff provide facts suggesting that his experience was just one of multiple incidences of unconstitutional activity or was a product of "a systemic failure of medical policies and procedures." *Lucas*, 58 F.4th at 1144; *see Jenkins*, 81 F.3d at 994 ("Ordinarily, proof of a single incident of unconstitutional activity is not sufficient to impose municipal liability." (brackets and internal quotation marks omitted) (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993))).

For these reasons, the Court grants Defendant Turn Key Health Clinics, LLC's motion (Dkt. 38) and dismisses the Complaint as to all claims asserted against Turn Key Health Clinics, LLC.

IV.   MOTION TO DISMISS OF DEFENDANTS WALTON, SAPPINGTON, AND STARKEY

Defendants Walton, Sappington, and Starkey, who are sued in both their individual and official capacities, seek dismissal of the claims raised against them on the bases that the allegations fail to state a cognizable claim for relief and that they are entitled to qualified immunity. Dkt. 41. Walton is Sheriff of Rogers County, Sappington is Undersheriff of Rogers County, and Starkey is a Captain with the Rogers County Sheriff's Office and jail administrator for the Facility. *Id.* at 9;

Dkt. 1, at 2-4, 11-12.  Plaintiff has responded in opposition to the motion (Dkt. 54), and Defendants Walton, Sappington, and Starkey have replied (Dkt. 56).

### a. Individual-Capacity Claims

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).  Plaintiff's individual-capacity claims against Defendants Walton, Sappington, and Starkey are predicated on a theory of supervisory liability.  Under this theory, it is insufficient for "a plaintiff merely to show [the] defendant was in charge of other state actors who actually committed the violation." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quoting *Jenkins*, 81 F.3d at 994-95).  Rather, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Id.* (internal quotation marks omitted) (quoting *Jenkins*, 81 F.3d at 994-95).  Plaintiff "must demonstrate an 'affirmative link' between the supervisor and the violation" by establishing: "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (quoting *Serna*, 455 F.3d at 1151).

Plaintiff alleges that Defendants Walton and Sappington are policy makers and "direct overseer[s]" of the Facility, and that Defendant Starkey directly oversees the Facility's polices and procedures.  Dkt. 1, at 11-12.  While a "defendant supervisor's promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights" can constitute sufficient personal involvement, there is no indication that policies caused a deprivation of Plaintiff's constitutional rights or that any of these defendants acted with deliberate indifference that a constitutional violation would occur. *Dodds*, 614 F.3d at 1195.  Plaintiff's sparse allegations against these defendants do not plausibly implicate his constitutional rights.

b. Official-Capacity Claims

Plaintiff's official-capacity claims against Defendants Walton, Sappington, and Starkey are, in effect, claims against Rogers County. *Porro*, 624 F.3d at 1328. As previously stated, municipal liability requires a showing that "(1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation." *Arnold*, 35 F.4th at 795.

Plaintiff complains that a policy requiring hourly deck checks was not properly adhered to, but he does not allege deficiencies in the policy itself or allege that the policy caused the violation of his constitutional rights. Plaintiff also criticizes the Facility's failure to effectively remediate mold in the Facility, but his allegations fall short of demonstrating a municipal custom or policy or a conscious or deliberate disregard to risk of harm. *See Waller*, 932 F.3d at 1284 (explaining that for municipal liability claims involving supervisory practices, the Plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences" (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997))). Thus, Plaintiff has failed to state cognizable official-capacity claims against Defendant Walton, Sappington, and Starkey.

c. Conclusion

For these reasons, the Court grants the motion of Defendants Walton, Sappington, and Starkey (Dkt. 41) and dismisses the Complaint as to all claims asserted against these three defendants.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Provide Identification of Defendants 'John and Jane Does AGW Staff' and 'Jane Does Turn Key Health Clinics Staff' (Dkt. 53) is **denied**;

2. The Complaint (Dkt. 1) is **dismissed**, in part, as to the individual and official capacity claims raised against the John and Jane Doe Defendants, for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1997e(c)(1);

3. Defendant Turn Key Health Clinics, LLC's Motion to Dismiss (Dkt. 38) is **granted** and the Complaint (Dkt. 1) is **dismissed**, in part, as to all claims asserted against Defendant Turn Key Health Clinics, LLC;

4. The Motion to Dismiss of Defendants Scott Walton, Jon Sappington, and Zach Starkey (Dkt. 41) is **granted**, and the Complaint (Dkt. 1) is **dismissed**, in part, as to all claims asserted against these three defendants;

5. The Joint Motion for Leave to Supplement the Special Report (Dkt. 59) is **denied** as moot; and

6. A separate judgment shall be entered in this matter.

IT IS SO ORDERED this 6th day of June, 2023.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE